IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JASON PHILPOT and PATRICK BERNARD REESE, <br><br> Defendants. | 1:15-cr-00028-WSD |

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Linda T. Walker's Report and Recommendation [70] ("R&R"), Defendant Jason Philpot's Objections to the R&R [73], and Defendant Patrick Bernard Reese's Objections to the R&R [75]. The R&R addressed Defendant Philpot's Motion to Suppress Evidence and Statements [37], Defendant Reese's Motion to Suppress Statements and the Fruits Thereof [26], and Defendant Reese's Motion to Suppress Defendant's Unlawful Arrest and the Fruits Thereof [41].

I.   BACKGROUND

   A.   Robbery and Arrest

Defendants Philpot and Reese are charged with the Hobbs Act robbery of a Waffle House restaurant, in violation of 18 U.S.C. § 1951(a) and (2) (Count One);

possessing and discharging a firearm during and in relation to the Waffle House robbery, in violation of 18 U.S.C. § 924(c)(1)(C) (Counts Two and Three); and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Counts Four and Five).  The charges arise from the robbery of a Waffle House restaurant in Tucker, Georgia on September 30, 2014.[1]

DeKalb Police Officer Lynn Anderson responded to the report of a robbery at the Waffle House restaurant at about 9:00 p.m. on September 30, 2014.  The dispatcher described the robbery suspects as two black males.  Officer Anderson responded to the dispatch.  When he arrived at the Waffle House, a bystander standing across the street from the restaurant pointed to the westbound traffic near the intersection of Lavista Road and Northlake Road and said "that's the guys over there."  The report Officer Anderson prepared of the events that night state that the bystander told him the suspects were in a van.  At the evidentiary hearing on these motions, Officer Anderson said there were no vans and that when the bystander made his comments, he pointed and said the suspects were in a vehicle, noting there were no vans in the traffic.

---

[1] The parties do not object to the facts set out in the R&R.  In the absence of an objection and the Court finding no plain error in them, the facts set out in the R&R are adopted by the Court.  See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

Officer Anderson moved his marked police car to block the six to eight cars in the westbound lanes that were waiting for the red light to change.  He also activated his emergency blue lights so that those in the waiting cars would know they were not to move their vehicles.  Officer Anderson noticed two black males in a car and moved toward it.  As he did, a Maroon Chevrolet Lumina moved around the car in front of it in the westbound lane and turned left at a fast speed.  Officer Anderson got into his patrol car and, with blue lights flashing, chased the Lumina.  He believed the men in the car were the Waffle House robbers.  The Lumina went through a gas station, behind a Target store, and then up an exit ramp where it hit a curb and flipped.  The driver and passenger got out of the car.  The driver fired either a semi-automatic or a black rifle at Officer Anderson.  The passenger pointed his weapon at Officer Anderson.

DeKalb County Police Officer Figueroa-Fred arrived at the scene and the driver and passenger fired at him.  Officer Figueroa-Fred said one of the men from the car was dressed in black and the other in a striped shirt.  The one with the striped shirt had a rifle and fired it at Officer Figueroa-Fred.  Further gunfire was exchanged.  The driver of the Lumina ran through a gas station and the passenger ran towards a rent-a-car store, then into the woods.  Both were running toward an abandoned steakhouse.

Officer Anderson got back into his car to help set up a perimeter.

Officer Pitts then arrived also to help set up the perimeter. In doing so, he heard a noise in the bushes and called for backup. When backup arrived and heat sensing equipment showed a heat source in the bushes, Officer Pitts and other law enforcement officers identified themselves as police officers. The suspect dressed in black emerged from the bushes. This individual, later identified as Defendant Reese, was handcuffed and put in Officer Anderson's patrol car.

While in the police car, driving to the police station, Officer Anderson said to Defendant Reese: "you bogus for shooting at me, trying to take me from my family." Defendant Reese had not been read his <u>Miranda</u> rights when Officer Anderson made his comment. Defendant Reese responded: "Man, I messed up, my grandmother going to be, my grandmother going to be disappointed in me."

A K-9 picked up the scent of the other suspect, and later, officers received a report that a suspicious person was trying to break into a room at a nearby hotel. Police officers moved quickly to the hotel where they found a bald man wearing jeans and no shirt. He was detained and handcuffed.

B.   <u>Post-Arrest Statements</u>

After Defendant Reese was transported to the interrogation room at the DeKalb County Police Department, he was interviewed by DeKalb County

Detective Chris Tappan.  Detective Tappan asked Defendant Reese background questions about his girlfriend, to which Defendant Reese volunteered that "the money" did not have anything to do with his girlfriend.  Detective Tappan responded:  "Okay, that may be true.  I mean we can, well I'll investigate whatever you tell me to."  Defendant Reese replied:  "I don't want to talk to nobody but the feds, man.  I just got out the fed."  Detective Tappan said:  "You don't want to talk to anybody but the feds."  Reese responded:  "Yep."  Detective Tappan asked Defendant Reese a series of biographical questions regarding his phone number, address, height, and weight.  After these questions, Detective Tappan read Defendant Reese his <u>Miranda</u> rights.  After Defendant Reese acknowledged that he understood his rights, Detective Tappan continued to question him.  At the time of the interrogation, Detective Tappan was in civilian clothes.  No firearm was visible.  Defendant Reese was free to walk about the room, the interrogation was conversational, and Detective Tappan did not threaten Defendant Reese.

    C.    <u>Procedural History</u>

Defendant Philpot moved to suppress evidence and statements he made based on what he claims was an illegal detention at the roadblock just before the

police chase.[2]  Defendant Reese also claims the roadblock detention was unconstitutional and seeks to suppress any evidence and statements made after this detention, including the statements made he made to Officer Anderson in the police car during his transport to the DeKalb County Police Station, and the statements he made during his interrogation by Detective Tappan at the police station.  The Magistrate Judge found that the roadblock was not an unconstitutional detention.  The Magistrate Judge further found, regarding the statements Defendant Reese made while in the patrol car en route to the police station, that the Government represented it did not intend to offer them at trial except possibly for impeachment.  The Magistrate Judge thus recommended that the request to suppress this patrol car statement be denied as moot.  She also found that the interrogation of Defendant Reese at the police station by Detective Tappan violated Defendant's invocation of his right to remain silent and recommended that these statements be suppressed except for the routine background information Defendant Reese provided in response to background questions.

---

[2]  Defendant Philpot did not identify any specific evidence or statement he seeks to suppress.  He states generally:  "Mr. Philpot respectfully requests that this court suppress evidence, statements, and fruits that flowed from this unconstitutional encounter."  (Mot. to Supp. [37] at 2).

Defendants Philpot and Reese object to the Magistrate Judge's finding that the roadblock detention was not illegal. Defendants argue that there were insufficient facts to support reasonable suspicion for blocking the westbound road lanes.

## II.     STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal citations omitted). With respect to those findings and recommendations to which a party has not asserted objections, the Court must conduct a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

### III.  DISCUSSION

    A.  Constitutionality of Roadblock

The Fourth Amendment prohibits unreasonable searches and seizures. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." Whren v. United States, 517 U.S. 806, 810-11 (1996); Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004). A person stopped by a roadblock is seized within the meaning of the Fourth Amendment. United States v. Regan, 218 F. App'x 902, 903 (11th Cir. 2007) (citing Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990)).

A search and seizure is allowed, however, where there is individualized suspicion of wrongdoing. A suspicionless seizure must be reasonable depending on the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. Id. There are, for example, circumstances where a law enforcement checkpoint is justified constitutionally even if its primary purpose relates to crime control. United States v. Rodger, 521 F. App'x 824, 828-29 (11th Cir. 2013). "[T]he Fourth Amendment would almost certainly permit an appropriately tailored roadblock set up . . . to catch a dangerous criminal who is

8

likely to flee by way of a particular route." City of Indianapolis v. Edmond, 531 U.S. 32, 44 (2000); United States v. Harper, 617 F.2d 35, 40-41 (4th Cir. 1980) (roadblock and stop of all persons to arrest dangerous suspects for known crime along route on which they were expected to travel was reasonable and did not violate Fourth Amendment); see also Rodger, 521 F. App'x at 828-29 (roadblock set up in path of dangerous, armed robbery suspect traveling a high speed does not violate Fourth Amendment where tailored to stop person who met suspect's description).

The question here is whether the stop of westbound traffic immediately after the Waffle House robbery violated Defendants' constitutional rights. The Court agrees with the Magistrate Judge that it did not. When the westbound traffic was halted, law enforcement personnel had critical information that justified the stop of the westbound lanes. First, they knew that an armed robbery had occurred at the Waffle House shortly before the traffic was stopped. Second, they knew that the suspects who had committed it had fled. Third, a bystander told Officer Anderson "that's the guys over there" pointing to the westbound traffic. Fourth, this combination of information indicated that public safety was at risk by the suspects fleeing from the area of the robbery.

The action Officer Anderson took was limited to stopping only the westbound traffic to conduct an immediate investigation to find the two suspects that a bystander said were in westbound traffic.  The purpose of the roadblock was to apprehend dangerous suspects known to have committed an armed robbery just before Officer Anderson and other law enforcement officials arrived.  The evidence supports that this roadblock detention was justified and was based on real, and reasonable, suspicion.[3]  Defendants' objection to the Magistrate Judge's finding that the roadblock was not an infringement on Defendants' Fourth Amendment rights is overruled.  Having reached this conclusion, the Court thus overrules Defendant Philpot's and Defendant Reese's objections to the finding that the roadblock was not unconstitutional.

B.   Statement by Defendant Reese

"[A] person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does

---

[3]   The Court considered Officer Anderson's initial testimony that he thought the Defendants were in a van even though they later were discovered in a Chevrolet Lumina. The facts are that the roadblock was put in place because officers were told by a bystander that Defendants were in a vehicle in the area at which the roadblock was placed. The placement of the roadblock so that dangerous suspects could be apprehend was reasonable and the vehicle description inconsistency does not discredit this conclusion.

10

make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)). "An officer's obligation to administer Miranda warnings attaches . . . only where there has been such a restriction on a person's freedom as to render him in custody." Id. (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam)) (internal quotation marks omitted); accord United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006).

Whether a person is in custody "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury, 511 U.S. at 323; see also United States v. Street, 472 F.3d 1298, 1309 (11th Cir. 2006) (same). While "[a]n officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned[,]" Stansbury, 511 U.S. at 325, "[a] policeman's unarticulated plan has no bearing on the question whether a suspect was in custody at a particular time . . . ," United States v. Lall, 607 F.3d 1277, 1284 (11th Cir. 2010) (citation and internal quotation marks omitted). "[U]nder the objective standard, the reasonable person from whose perspective custody is defined is a reasonable innocent person." Street, 472 F.3d at

11

1309 (citation omitted); see also Brown, 441 F.3d at 1347 (same); United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996) ("Whether a defendant knows he is guilty and believes incriminating evidence will soon be discovered is irrelevant."). The objective factors to be considered include "'whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled, as well as the location and length of the detention.'" United States v. Riquene, 552 F. App'x 940, 942 (11th Cir. 2014) (quoting United States v. Luna-Encinas, 603 F.3d 876, 881 & n.1 (11th Cir. 2010)). Whether a person is in custody depends on the "totality of the circumstances." See, e.g., Lall, 607 F.3d at 1284; United States v. McDowell, 250 F.3d 1354, 1362 (11th Cir. 2001).

A person's right against self-incrimination while in custody or during a custodial interrogation requires that the suspect be given the warnings required in Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-301 (1980). It follows that "'[v]oluntary and spontaneous comments by an accused . . . are admissible evidence if the comments were not made in response to government questioning.'" United States v. Sanders, 315 F. App'x 819. 823 (11th Cir. 2009)

(quoting Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir, 1991)), see also Miranda, 384 U.S. at 478

Defendant Reese made two statements which he seeks to suppress: (1) those made to Officer Anderson in the police car during his transport to the DeKalb County Police Station; and, (2) those made by him during his interrogation by Detective Tappan at the police station.

### 1. Statements Made in the Police Car

The Magistrate Judge, in her R&R, found that the Government represented it does not intend to introduce the in-vehicle statements during its case-in chief. The Government might seek to introduce the statements, if at all, only to impeach statements Defendant Reese may make if he testifies at trial. Since the statement will not be introduced in the Government's case-in-chief, Defendant Reese's motion to suppress the statement as evidence in the Government's case-in-chief is denied as moot.

The remaining question is whether the police vehicle statements may be used to impeach Defendant Reese. A statement made in violation of Miranda is not precluded from being used for impeachment purposes. Harris v. New York, 401 U.S. 222 (1971); Oregon v. Hass, 420 U.S. 714, 722 (1975). For the statement to be admissible, the defendant must have made "an independent and informed

13

choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him." Martin v. Wainwright, 770 F.2d 918, 928 (11th Cir. 1985).  Here there is no evidence that Officer Anderson threatened or intimated Defendant Reese while in the police car.  Officer Anderson's statement is best characterized as a direct comment that Defendant Reese had put his life at risk and that he resented it. Defendant Reese responded, voluntarily, that he had "messed up."

In view of the Government's representation that it does not intend to introduce Defendant Reese's in-vehicle statements unless necessary to impeach him, the Magistrate Judge recommended the Court deny the request of suppression for these statements.  The Court, upon *de novo* review, finds no error in this finding and recommendation and Defendant Reese's objection to use of the police car statement is overruled as moot.

        2.       Defendant Reese's Statements During the Police Officer Interrogation

After Defendant Reese arrived at the DeKalb County Police Station, the Magistrate Judge found that Defendant Reese was not initially read his Miranda warnings and, when asked about his girlfriend, he said that the "money" had nothing to do with her.  He also said he would only speak to the "feds."  Defendant Reese was then read his Miranda rights by Detective Tappan.  After his rights were

read, Defendant Reese was asked various routine biographical questions and questioned on substantive matters. He was questioned about the substantive matters even though he said that he would not speak to anyone other than the "feds," making it clear he would not speak to Detective Tappan.

The Magistrate Judge, relying on Michigan v. Mosely, 423 U.S. 96, 103-104 (1975), stated that the government must "scrupulously honor" a Defendant's right to remain silent. The Magistrate further determined that whether the invocation was "scrupulously honor[ed]" is determined on a case-by-case basis and that scrupulous honoring, "at a minimum, . . . requires that the government refrain from questioning a suspect unless he both (1) initiates further conversation; and (2) waives the previously asserted right to silence." United States v. Muhammad, 196 F. App'x 882, 885 (11th Cir. 2005) (citing Jacobs v. Singletary, 952 F.2d 1282, 1293 (11th Cir. 1992)). It is the government's burden to show defendant reinitiated the conversation and waived his right to remain silent. Everett v. Sec'y Fla. Dep't of Cor., 779 F.3d 1212, 1241 (11th Cir. 2015).

The Magistrate Judge found that Defendant Reese invoked his right to remain silent when he stated he would only speak to the "feds" and that the Government failed to show that he reinitiated the conversation and waived his right to remain silent during further questioning. The Magistrate Judge recommended

that Defendant Reese's motion to suppress the statements he made at the police station interrogation be granted. The Government did not object to these findings and recommendations and the Court finds no plain error in them. See Slay, 714 F.2d at 1095.

## IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Magistrate Judge Linda T. Walker's Report and Recommendation [70] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant Philpot's Objections to the R&R [73] and Defendant Reese's Objections to the R&R [75] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant Philpot's Motion to Suppress Evidence and Statements [37] is **DENIED**.

**IT IS FURTHER ORDERED** Defendant Reese's Motion to Suppress Statements and the Fruits Thereof [26] and Motion to Suppress Defendant's Unlawful Arrest and the Fruits Thereof [41] are **DENIED IN PART** and **GRANTED IN PART**. They are **DENIED** with respect to his grounds that the roadblock violated his Fourth Amendment rights. His request to suppress the statements he made during transportation to the DeKalb County Police Station is denied as moot. The motions are **GRANTED** with respect to the statements, other

than the personal background information he provided, that he made during his interrogation at the DeKalb County Police Station.

**SO ORDERED** this 8th day of February, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE