# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:15-cr-28-WSD-LTW |
| JASON PHILPOT, | |
| Defendant. | |

## OPINION AND ORDER

This matter is before the Court on Defendant Jason Philpot's ("Philpot") Motion in Limine [113].

## I. BACKGROUND

On January 27, 2015, a grand jury in the Northern District of Georgia returned a five-count Indictment [1] charging Philpot and co-defendant Patrick Bernard Reese ("Reese") (together, "Defendants") with aiding and abetting each other in Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Count 1); using, carrying and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 2 and 3); and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Counts 4 and 5). The Indictment alleges that, on September 30, 2014, Defendants robbed a Waffle

House restaurant in Tucker, Georgia. The Government recovered two face masks during its investigation of the robbery.

On June 8, 2016, Mackenzie Kilkeary ("Ms. Kilkeary"), a forensic biologist from the Georgia Bureau of Investigation, issued a two-page report (the "Report") comparing Defendants' DNA samples with DNA material taken from the face masks. The Report concluded, "[w]ith a reasonable scientific certainty," that DNA obtained from one of the masks "originated from [Philpot] or his identical sibling." ([113.1] at 1).[1] The Report found that "[t]he frequency of the DNA alleles shared between Jason Philpot and the DNA obtained from [the mask] is approximately 1 in 400 quadrillion in the African American population and 1 in 1 quintillion in the Caucasian population." ([113.1] at 1). The Report does not clearly explain the methodology used to reach these conclusions.[2]

On February 28, 2017, Philpot filed his Motion in Limine, arguing that "the government's expert has not presented any evidence in support of her population frequency statistical analysis." ([128] at 4). Philpot asks the Court to "exclude that aspect of the witness's opinion regarding the frequency of the DNA alleles

---

[1] The Report also concluded that DNA obtained from one of the masks originated from Reese or his identical sibling. ([113.1] at 1).

[2] The Report states that "[t]echnical notes and data supporting the conclusions and findings in this report are maintained within the laboratory case records." ([113.1] at 2).

2

alleged in this case, or in the alternative to conduct a Daubert hearing on this issue." ([128] at 4).

## II. DISCUSSION

Under the Federal Rules of Evidence, expert testimony is admissible if: (1) the expert is qualified to testify regarding the subject matter of her testimony; (2) the methodology that the expert used to reach her conclusions is sufficiently reliable; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or in determining a fact at issue. United States v. Scott, 403 F. App'x 392, 397 (11th Cir. 2010) (citing United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc)); Fed. R. Evid. 702. The Government has the burden to meet each of the requirements of admissibility. See Scott, 403 F. App'x at 397-98.

The second prong requires the district court to make a preliminary determination on whether the expert's methodology is reliable. Scott, 403 F. App'x at 397. In Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 (1993), the Supreme Court provided a non-exclusive list of factors for the district court to consider:

> (1) whether the expert's theory can be and has been tested;
> (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

Frazier, 387 F.3d at 1262. These factors are only general guidelines, and the trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).

Ms. Kilkeary's two-page Report does not adequately describe the methodology used to reach her conclusion that "[t]he frequency of the DNA alleles shared between Jason Philpot and the DNA obtained from [the mask] is approximately 1 in 400 quadrillion in the African American population and 1 in 1 quintillion in the Caucasian population." ([113.1] at 1). The Government also has not submitted evidence that Ms. Kilkeary is "qualified as an expert" under Rule 702. Fed. R. Evid. 702; see Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified."). Without this foundational information, the Court cannot determine whether Ms. Kilkeary's testimony on DNA allele frequency is admissible under Rule 702 and Daubert. Accordingly, the Government shall, on or before May 12, 2017, submit evidence of Ms. Kilkeary's qualifications and detailed evidence supporting the methodology she employed in reaching her opinion regarding the DNA allele frequency in this case. If necessary, the Court will conduct a Daubert hearing at 9:30 a.m. on June 1, 2017.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Government shall, on or before May 12, 2017, submit evidence of Ms. Kilkeary's qualifications and detailed evidence supporting the methodology she employed in reaching her opinion regarding the DNA allele frequency in this case. If necessary, a <u>Daubert</u> hearing will be conducted in Courtroom 1705 at 9:30 a.m. on June 1, 2017.

**SO ORDERED** this 21st day of April, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE