# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.                                                    1:15-cr-28-WSD

JASON PHILPOT,

Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Jason Philpot's ("Philpot")

Motion to Withdraw Guilty Plea [247]; *Pro Se* Motion for Leave to File *Pro Se*

Supplemental Brief in Support of Motion to Withdraw Guilty Plea [251]; *Pro Se*

Motion to Produce Trial Transcript [252]; Motion for New Trial and Supplemental

Brief in Support of Motion to Withdraw Plea [253]; and *Pro Se* Motion to File

Supplemental Briefs in Support of Counsel's Motion [262].

## I.     BACKGROUND

On January 27, 2015, a grand jury in the Northern District of Georgia

returned a five-count indictment [1] charging Philpot and co-defendant Patrick

Bernard Reese ("Reese") with committing a Hobbs Act robbery, including as an

aider and abettor, in violation of 18 U.S.C. §§ 1951 and 2 (Count One);

using, carrying and discharging a firearm during and in relation to a crime of

violence, in violation of 18 U.S.C. § 924(c) (Counts Two and Three); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Counts Four and Five). The indictment alleged that on September 30, 2014, Philpot and Reese robbed a Waffle House restaurant in Tucker, Georgia.

On July 31, 2017, Philpot pled guilty to Count One. ([209]). At his change of plea hearing, Philpot was advised of, and waived, his right to trial, his right against self-incrimination, and other rights of which he was advised during the hearing. He acknowledged the elements of the offense, the Government's burden to prove them by the admission of evidence, and his right to a unanimous verdict. He agreed to the maximum punishment that could be imposed and admitted to facts that support the Hobbs Act robbery charge to which he was pleading guilty, specifically his role as the driver of the vehicle involved in the robbery of the Waffle House. Philpot ultimately stated he believed it was in his best interest to plead guilty to Count One. The Court accepted his plea and found Philpot had voluntarily and knowingly entered his plea of guilty.[1]

The case proceeded to trial against Reese on Counts One, Three, and Five, and against Philpot on Counts Two and Four. On August 4, 2017, the jury found

---

[1] The matters covered in the change of plea hearing are discussed in more detail in the Discussion section of this Order.

Philpot guilty on both counts. ([217]). The jury acquitted Reese on the counts alleged against him.

Victoria Calvert of the Federal Defender Program represented Philpot at his change of plea hearing and at trial. On August 21, 2017, Philpot, while represented by Ms. Calvert, filed, *pro se*, post-trial motions [228], [229] (collectively, "First Post-Trial Motions") seeking relief from his conviction on Count One, to which he had pled, and Counts Two and Four on which he was found guilty at trial.

On August 23, 2017, the Court denied [230] Philpot's First Post-Trial Motions because Philpot was represented by counsel when the motions were filed *pro se*. Our Local Rule 57.1(D)(3) prohibits the filing of *pro se* motions by a defendant who is represented.

On September 12, 2017, Philpot filed further *pro se* motions including a Motion to Produce Trial Transcripts [235], Motion to Withdraw Guilty Plea [236], and Motion for Judgment of Acquittal [237] (collectively, "Second Post-Trial Motions").

On September 19, 2017, the Court denied the Second Post-Trial Motions also because Philpot was represented by Ms. Calvert when the motions were filed. ([238]).

On August 31, 2017, Philpot requested to be appointed new counsel, and on September 20, 2017, Magistrate Judge Linda T. Walker appointed Jay L. Strongwater as Philpot's new lawyer. ([232]; [240]). Philpot was granted an extension of time in which to re-file his post-trial motions. ([244]).

On November 6, 2017, Philpot filed his Motion to Withdraw Guilty Plea [247]. Philpot argues that he should be allowed to withdraw his plea to Count One because his plea was not made knowingly. Philpot argues that he entered his plea believing he would be convicted of the Hobbs Act robbery as an aider and abettor, and would still have a defense to the "carrying or use" of a firearm during the commission of a felony. He argues that his plea, as an aider and abettor, "was in effect an admission of guilty [sic] as to the two firearms counts [Two and Four] at trial." ([247] at 5). He argues that the Government's emphasis at trial on his conviction for Count One showed that when Philpot admitted to the factual predicate to substantiate his guilty plea to aiding and abetting the robbery he was effectively admitting to the firearms violations. Because the plea to Count One had no "strategic purpose" at the trial on the remaining counts, Philpot argues his plea was not made knowingly and that he should be permitted to withdraw it.

On November 17, 2017, the Court, at the request of Mr. Strongwater, granted Philpot a second extension of time to file post-trial motions. ([250]).

On December 15, 2017, Philpot filed his *Pro Se* Motion for Leave to File

*Pro Se* Supplemental Brief in Support of Motion to Withdraw Guilty Plea [251].

Philpot argues that Mr. Strongwater is not familiar with the issues of his case and

that the motion to withdraw his guilty plea omits certain material arguments.[2]

On December 18, 2017, Philpot filed his Motion for New Trial and

Supplemental Brief in Support of Motion to Withdraw Plea [253].  In it, Philpot

claims his guilty plea to Count One was entered on "the mistaken belief" that his

plea to the Hobbes Act conspiracy as an aider and abettor "would negate

culpability as to the two firearms counts."  ([253] at 2).  Philpot also argues that his

plea should be withdrawn because Count One of the indictment charges only that

Philpot and Reese committed the robbery "aided and abetted by each other," and

does not allege that any other individuals were involved.  The indictment does not

charge that "others known or unknown to the grand jury" participated.  This

distinction is significant because Philpot pled guilty on the basis that he aided and

abetted two persons, other than Reese, who Philpot claims entered the restaurant

and robbed it.  He claims he was only the "getaway driver" for the two unnamed

---

[2]     On December 15, 2017, Philpot filed his *Pro Se* Motion to Produce Trial
Transcript [252].  The trial transcripts were subsequently made available on the
docket on January 11, 2018, [256]-[260], and this motion is denied as moot.

individuals who actually robbed the restaurant. Because Philpot "did not participate in the offense charged . . . [t]his discrepancy undermines the integrity of the plea" and Philpot argues he should be allowed to withdraw it.

Philpot also moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure on the grounds that (1) "the withdrawal of his guilty plea[,] [if permitted,] leaves open for jury determination essential elements of the [remaining] offenses," and (2) the stipulation regarding his prior conviction for being a felon in possession of a firearm was "defective." ([253] ¶ 7).

On January 22, 2018, Philpot also filed his *Pro Se* Motion to File Supplemental Briefs in Support of Counsel's Motion [262]. Philpot again argues that the post-trial appointment of new counsel requires the Court to grant leave for him to file supplemental briefs in support of the motions filed by Mr. Strongwater.

## II. DISCUSSION

### A. The *Pro Se* Motions

Philpot has filed a number of *pro se* motions while he was represented by Ms. Calvert and Mr. Strongwater. Local Criminal Rule 57.1(D)(3) provides limited circumstances in which a represented party may file *pro se* motions in a criminal case:

> ***Pro Se* Appearance Limitations**. Whenever a party has appeared by attorney, the party may not thereafter appear or act in the party's own

behalf in the action or proceeding or take any step therein unless the party has first given notice of the party's intention to the attorney of record and to the opposing party and has obtained an order of substitution from the court. Notwithstanding this rule, the court may in its discretion hear a party in open court even though the party has previously appeared or is represented by [an] attorney.

LCrR 57.1(D)(3), NDGa.

Mr. Strongwater is now fully engaged in his representation of Philpot and has moved (i) to withdraw Philpot's plea and (ii) for a new trial. These motions include, in a more focused way, the grounds for post-trial relief including the bases asserted in Philpot's *pro se* filings. The Court concludes that Philpot's legal position is adequately presented in the submissions filed by Mr. Strongwater and that Philpot's *pro se* motions were not allowed under our Local Criminal Rule 57.1(D)(3). Philpot's *pro se* motions are denied. <u>See</u> <u>United States v. Daniels</u>, 572 F.2d 535, 540 (5th Cir. 1978)[3] ("It is settled law that a defendant has the right to represent himself in a criminal trial and that he has the right to the assistance of counsel. The criminal defendant does not have the right, however, to a 'hybrid representation,' partly by counsel and partly by himself.") (internal citations omitted); <u>see also</u> <u>United States v. Dupree</u>, No. 1:10-cr-94, 2012 WL 12965627, at

---

[3] The Eleventh Circuit, in the *en banc* decision <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

*1 n.1 (N.D. Ga. Apr. 5, 2012) (denying a criminal defendant's *pro se* motions for failure to comply with Local Criminal Rule 57.1(D)(3)). The Eleventh Circuit has held that "the right to counsel and the right to proceed *pro se* exist in the alternative." United States v. Dale, 618 F. App'x 494, 497 (11th Cir. 2015) (citing United States v. LaChance, 817 F.2d 1491, 1498 (11th Cir. 1987)). "The district court may allow a defendant to proceed with 'hybrid representation'; however, this decision 'rests in the sound discretion of the trial court.'" Id. The Court specifically finds, in light of Mr. Strongwater's representation of Philpot, there is no prejudice to Philpot in declining to consider his *pro se* motions.

B.      Motion to Withdraw Guilty Plea

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a defendant may withdraw a plea of guilty after the court accepts the plea but before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). A pre-sentence motion to withdraw "is to be liberally construed," but "there is no absolute right to withdraw a guilty plea." United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1998). It is a defendant's burden to establish a fair and just reason for withdrawal. See United States v. Cesal, 391 F.3d 1172, 1179 (11th Cir. 2004); vacated on other grounds at 345 U.S. 1101 (2005), reinstated at 2005 WL 1635303 (11th Cir. July 13, 2005).

"In determining whether the defendant has met this burden, the district court may consider the totality of the circumstances," including "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Buckles, 843 F.2d at 471-72 (internal citations omitted). The district court also can consider the defendant's admission of factual guilt at the Rule 11 hearing and the timing of the motion to withdraw. United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). Whether to allow a defendant to withdraw a guilty plea is left to the sound discretion of the trial judge. Cesal, 391 F.3d at 1179.

Philpot does not dispute that he was advised of, understood, and waived the rights explained to him at the hearing, that he understood and agreed on the elements of Count One that were required to be proven at trial, that he understood the maximum punishment that could be imposed on him, that he was satisfied with Ms. Calvert's representation of him, or that there was a factual basis for his plea. He argues now that he should be allowed to withdraw his plea because he admitted only to aiding and abetting two individuals not named in the indictment. The indictment states only that Philpot and Reese committed the robbery of the Waffle House, "aided and abetted by each other," and does not allege that any other

individuals participated in the robbery.

At the plea hearing, the Government laid out the facts it was prepared to prove at trial, including that Philpot and Reese entered the Waffle House, brandished firearms at employees, took personal property from employees and the restaurant, fled the scene in a vehicle, and upon crashing the vehicle, fired weapons at police officers. (July 31, 2017, Plea Hearing [209] ("Tr.") at 29:7-30:25). When asked by the Court whether Philpot admitted to the conduct described, he objected, stating that he was the getaway driver for the robbery and remained in the car with Reese while two individuals—other than Reese—robbed the restaurant:

| | |
|---|---|
| **COURT**: | So are you saying you don't admit you were in the Waffle House? |
| **PHILPOT**: | No, sir. |
| **COURT**: | And where were you? |
| **PHILPOT**: | I was inside of the car driving. |
| **COURT**: | Did you know that the crime was going to be -- that the Waffle House was going to be robbed? |
| **PHILPOT**: | Yes, Your Honor. |
| **COURT**: | And did you know that it was going to be robbed with the use of a weapon by your co-defendant, Mr. Reese? |
| **PHILPOT**: | Yes, Your Honor. |
| **COURT**: | And did you have a weapon on you on that day? |
| **PHILPOT**: | No, Your Honor. |

. . .

**COURT**: So from your perspective, you are sitting in the car, what happened? Explain to me what happened?

**PHILPOT**: Sitting inside of the car, there were actually two other individuals that was with us who robbed -- or two individuals enter inside of the Waffle House with the intent to rob the Waffle House.

**COURT**: So they were inside when you got there already or they were in the car with you?

**PHILPOT**: They were in the car with me.

**COURT**: So you parked the car, and then what happens?

**PHILPOT**: They got out, went inside of the Waffle House.

**COURT**: And how many people got out of the car, two or three?

**PHILPOT**: Two.

**COURT**: And who were they?

**PHILPOT**: It was a dude by the name of Darrius and another dude named Bear.

**COURT**: And was Mr. Reese in the car with you?

**PHILPOT**: Yes, he was.

. . .

**COURT**: Okay. So who were the two that actually went in?

**PHILPOT**: Darrius and Bear. I don't know his real name.

**COURT**: Was one of the people that went in Mr. Reese?

**PHILPOT**: No, it wasn't.

> **COURT**:    So he stayed with you?
>
> **PHILPOT**: Yes.

(Tr. at 31:14-33:23).  Philpot went on to explain that he drove the men away from the Waffle House, crashed the car while being pursued by police, fled on foot and heard gunshots.  He did not admit to carrying or firing a weapon.  Philpot then admitted that he aided and abetted the robbery as the getaway driver:

> **COURT**:    So when you were in the parking lot with these three other people, you knew that somebody was going to go in and rob the Waffle House?
>
> **PHILPOT**: Yes.
>
> **COURT**:    And you were the get-away car driver, I guess?  Would that be fair to say?
>
> **PHILPOT**: Yes, Your Honor.
>
> **COURT**:    And that you, in fact, aided, helped them in this robbery by leaving them from the scene -- or driving them from the scene in this Chevy Lumina?
>
> **PHILPOT**: Yes, sir.

(Tr. at 35:2-12).

The Court found that Philpot's statements constituted a sufficient factual predicate to accept his guilty plea to Count One on an aiding and abetting theory, even though the facts to which he admitted were different from those put forward by the Government at the hearing and in the indictment.  (Tr. at 39:7-19).  Philpot then asked the Court:

> I would like to know, am I admitting – I'm not admitting to using the weapon in the Hobbs Act robbery. I'm admitting to aiding and abetting. Even though I know -- I know that weapons were used, I am not admitting to having used weapons. I understand how federal laws can be kind of tricky and confusing at times.

(Id. at 40:9-15). The Court directed Philpot to confer with his counsel regarding his question. After this consultation, Philpot stated that he did not disagree with his counsel's statements that his admission was sufficient to support Count One and he believed it was in his best interest to plead guilty to Count One. (Id. at 41).

The Court concluded the hearing finding Philpot was voluntarily and knowingly pleading guilty to Count One, he was not coerced into pleading to the count, and there was a sufficient factual basis to find Philpot guilty of aiding and abetting a Hobbs Act robbery.

A fundamental principle of the Fifth Amendment is that a defendant can only be convicted for a crime charged in the indictment. United States v. Keller, 916 F.2d 628, 633 (11th Cir. 1990). "Two types of problems can arise as a result of a trial court's deviation from an indictment. When a defendant is convicted of charges not included in the indictment, an amendment of the indictment has occurred. If, however, the evidence produced at trial differs from what is alleged in the indictment, then a variance has occurred." Id. The Eleventh Circuit has discussed the difference between an amendment and a variance:

> the proper distinction between an amendment and a variance is that an amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment. A variance occurs when the facts proved at trial deviate from the facts contained in the indictment but the essential elements of the offense are the same.

Id. at 634; see also United States v. Miller, 471 U.S. 130, 138 (1985). The distinction between an amendment and a variance is important. An amendment is *per se* reversible error. Id. at 633. For a judgment to be reversed based on a variance, the defendant must show that his rights were substantially prejudiced by the variance. Id.

The foundation for this distinction and effect was discussed in Stirone v. United States, 361 U.S. 212 (1960). In Stirone, the Supreme Court considered a Hobbs Act extortion charge against the defendant. The Court noted the two elements of Hobbs Act extortion that must be charged in the indictment: interference with commerce and extortion. The indictment charged the defendant with the extortion of a concrete supplier by fear and threats of labor disputes. Id. at 213. The indictment charged the nexus to interstate commerce was the movement of sand from outside of the state of Pennsylvania to the supplier's plant for the manufacture or mixing of concrete. Id. But the trial court charged the jury that interstate transportation of steel could be considered in determining if the interstate

commerce element was proven.  Id. at 214.  The Supreme Court held "[t]he indictment here cannot fairly be read as charging interference with movements of steel from Pennsylvania to other States."  Id. at 217.  The Supreme Court reversed, holding the defendant "was convicted on a charge the grand jury never made against him" specifically interference with commerce by interstate transportation of a material not alleged by the grand jury.  Id. at 219.

The rationale in Stirone was applied by the Fifth Circuit in United States v. Salinas, 654 F.2d 319 (5th Cir. 1981).  Salinas is binding authority here.[4]  In Salinas, the indictment charged that the defendant aided and abetted a bank's president, Louis Woodul, in misapplying bank funds in connection with a loan.  Id. at 322.  The evidence at trial showed that it was the bank's vice president, James Nance—not Woodul—who authorized the loan and misapplied bank funds.  Id. at 323.  The evidence showed that the defendant aided and abetted Nance.  Even though the indictment alleged only Woodul misapplied funds, the trial court instructed the jury that the evidence must show that the person who authorized the loan was "an officer, director or employee of the bank."  Id.  The Salinas court

---

[4]      Salinas was decided on August 24, 1981, and is binding on this Court. Bonner, 661 F.2d at 1209 (adopting as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981).

found the instruction inconsistent with the indictment, stating:

> [b]y allowing the jury to convict if it found that the principal whom Salinas aided and abetted was an officer, director, employee, or agent of the bank when the indictment only charged him with aiding and abetting a specific individual, Woodul, the trial judge modified an essential element of the offense . . . The trial court's instructions in effect expanded the indictment to include other individuals not named in the indictment (i.e., Nance). The grand jury could have named Nance. It could have charged "unnamed principals." It chose not to do so. Although it may be difficult to imagine that the identity of the principal involved would have had any effect on the grand jury's decision to return an indictment, the Supreme Court has cautioned against speculating as to what a grand jury would have done.

Id. at 324 (citations omitted). In reversing the defendant's conviction, the Salinas court explained further that "[t]he indictment said in effect that Woodul stole and that the [defendant] helped. Once it is shown that the named principal did not steal, it begins to look like the [defendant] was convicted of a crime different from that of which he was accused." Id. at 325.

Similarly, in United States v. Keller, the Eleventh Circuit found the indictment in that case was constructively amended because the indictment charged a conspiracy between two specific individuals, but the district court allowed the jury to convict if it found that the defendant conspired to commit the crime with anyone. 916 F.2d at 634. The Eleventh Circuit held: "where the indictment specifically alleges that only two individuals conspired, and contains no language indicating that there were unnamed or unknown conspirators, we believe

16

that an essential element of the offense is the identity of the individuals who agreed." Id.[5]

This holding has been followed by our circuit in other cases. In United States v. Nunnally, the court held: "where the indictment alleges that only two people were involved in a conspiracy and does not contain language indicating that the conspiracy involved unnamed 'other' participants, in order to convict the jury must specifically conclude that the two named defendants conspired together." 249 F. App'x 776, 778 (11th Cir. 2007) (citing Keller, 916 F.2d at 634-36).

Count One of the indictment charges Philpot with a Hobbs Act robbery. The

---

[5]    Although a constructive amendment typically occurs in the context of a jury trial, the Eleventh Circuit has considered whether a defendant may be convicted on elements outside of an indictment based on facts admitted at a plea hearing. See Evans v. United States, 218 F. App'x 924, 926 (11th Cir. 2007) (finding no constructive amendment where defendant pleaded guilty to attempt to possess with the intent to distribute cocaine where facts adduced at plea hearing indicated that the substance at issue was in fact chalk); United States v. Padilla, 561 F. App'x 890, 891 (11th Cir. 2014) (analyzing whether judgment after plea hearing impermissibly amended indictment by listing a different subsection of the offense); Marquez-Silva v. United States, No. 8:07-CV-57-T-30-TBM, 2007 WL 1725203, at *1 (M.D. Fla. June 14, 2007) (analyzing whether sentence resulting from guilty plea based on an amount of drugs greater than that presented in the indictment is a constructive amendment); see also United States v. Bastian, 770 F.3d 212, 220 (2d Cir. 2014) ("While a constructive amendment typically contemplates a jury trial, we have also recognized the challenge in the context of a guilty plea that, by its terms, amends the charges brought by the indictment."); United States v. Tello, 687 F.3d 785, 791 (7th Cir. 2012); United States v. Iacaboni, 363 F.3d 1, 7 (1st Cir. 2004).

indictment is specific.  It alleges that Philpot and Reese "aided and abetted by each other, did knowingly obstruct, delay, and affect commerce and the movement of articles and commodities in such commerce, by robbery, . . . in that [Philpot and Reese] did unlawfully take and obtain property . . . belonging to Waffle House, located at 4278 Lavista Road, Tucker, Georgia, a business then engaged in interstate commerce, from the presence of an employee of the business, by means of actual and threatened force, violence and fear of injury."  ([1]).  Count One simply alleges that Philpot and Reese committed the robbery "aided and abetted by each other."  (Id.).  The count does not allege, specifically or generally, that anyone else was involved in the robbery.  Under the plain language of the charge, it was alleged that Philpot either committed the robbery himself, or aided and abetted Reese in its commission.  Philpot at his change of plea hearing disagreed that he and Reese committed the robbery alone.  He was adamant that he and Reese were involved but stayed in Philpot's car, that he was only the driver, and that "Bear" and "Darrius" entered the Waffle House to rob it.

In accepting Philpot's plea to Count One the morning of trial, the Court accepted that Philpot aided and abetted Bear and Darrius who forced employees in the restaurant to turn over restaurant monies.  In doing so, the Court acknowledged that it amended the indictment to find Philpot aided and abetted persons other than

Reese. The amendment impermissibly changed the charge on which Philpot was found guilty and the Court grants Philpot's motion to withdraw his plea to Count One.

C.    Motion for New Trial

A motion for a new trial must be granted "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court may grant a new trial in the interest of justice when a defendant was "unable to receive a fair trial and suffered actual, compelling prejudice." United States v. Pedrick, 181 F.3d 1264, 1267 (11th Cir. 1999). "The decision to grant or deny the new trial motion is within [the] sound discretion of the trial court." United States v. Vicaria, 12 F.3d 195, 198 (11th Cir. 1994).

Philpot moves for a new trial on two grounds. First, he argues the withdrawal of his guilty plea requires a new trial on all counts because his conviction on Count One influenced the jury's decision on Counts Two and Four. Second, he argues his stipulation to being a felon in possession was "defective" because possession of a firearm was an element charged in Counts Two and Four.

Because Philpot's motion to withdraw his guilty plea to Count One is granted, he is entitled to a new trial on Count One. The question remains whether

the withdrawal of Philpot's guilty plea to Count One also requires a new trial on Counts Two and Four.

At trial, the parties argued whether and how to admit evidence of Philpot's guilty plea to the robbery charged in Count One. Philpot argued that if the Government was allowed to introduce evidence of his guilty plea, then, in fairness, the jury should hear that his admission was that he aided and abetted others in the robbery. (Trial Tr. Vol. IV [259] at 781-82). Philpot's theory was apparently that if the jury heard only that he pled guilty to the robbery, they would be improperly influenced to find that he committed the firearms charges.

The Court admonished the jury that they would be tasked with finding whether Philpot was guilty of Counts Two and Four independent of his guilty plea and, in so doing, would be entitled to find that Philpot participated in the robbery as a principal, as the Government's theory suggested. In other words, because Count Two charged Philpot with the use of a firearm during a crime of violence (the Hobbs Act robbery charged in Count One), the jury could find that Philpot acted as a principal in the robbery, not merely as an aider and abettor, and could thereby satisfy this element of Count Two. (Id. at 786:19-787:2).

The Government objected to the admission of evidence or jury instructions indicating that Philpot pled guilty to Count One on an aiding and abetting theory.

(Id. at 788:2-23).  The Government proposed that evidence of Philpot's plea could come from the testimony of Special Agent Tim Burke, who was present at Philpot's plea hearing.  Philpot's counsel requested permission to question Agent Burke regarding the nature of Philpot's plea so that the jury could hear that Philpot pled guilty on an aiding and abetting theory.  (Id. at 790:1-5).  The Court rejected this request, reasoning that there is no legal distinction between aiding and abetting and the principal offense, and that the admission of Philpot's plea as an aider and abettor would unfairly prejudice Reese.  (Id. 797:11-22).  Philpot argued that it was unfair that the jury hear that Philpot pled guilty to Count One but not the "crucial fact" that he was an aider and abettor.  Philpot preserved his objection on the issue. (Id. at 794:9-16, 798:6-7).

The Court stated that Agent Burke's testimony was the best way to submit evidence of Philpot's plea, and it allowed cross examination only on matters related to his presence at the hearing and his memory, not on the details of Philpot's statements.  (Id. 797:11-22).  The Court reminded Philpot of his right to testify and explain his role in the robbery.

At the end of the Government's case-in-chief, the Government called Agent Burke, who testified that Philpot pled guilty to Count One.  (Id. at 829:2-7). Philpot did not cross examine Agent Burke.[6]

---

[6]     The Court gave the following limiting instruction to protect Reese from being unfairly prejudiced:

> Right before the break, evidence was admitted of Mr. Philpot's plea of guilty to Count One of the indictment.  This evidence applies only to Mr. Philpot and the crimes charged against him.
>
> You may not use the evidence of Mr. Philpot's conviction on Count One in any way in considering if the government has proved beyond a reasonable doubt the elements of the offenses with which Mr. Reese is charged.
>
> That is, you must determine if the government has proved beyond a reasonable doubt the charges against Mr. Reese, including Count One. You cannot use Mr. Philpot's conviction on Count One in any way when considering proof of the charges against Mr. Reese.

(Id. at 847:29-848:3).

After closing arguments the Court provided its final instructions to the jury. The Court repeated a similar instruction regarding the use of the evidence of Philpot's guilty plea, adding that "[t]his evidence applies only to Mr. Philpot and the charge -- and the crimes charged against him."  (Id. at 984:6-7).  The Court again emphasized that the jury "must determine if the government has proved beyond a reasonable doubt the charges against Mr. Reese, including Count One. You cannot use Mr. Philpot's conviction on Count One in any way when considering proof of the charges against Mr. Reese."  (Id. at 984:12-16).  The Court did not give any instruction on how the consideration of Philpot's conviction on Count One impacted the jury's deliberations on Counts Two and Four.

The withdrawal of Philpot's guilty plea to Count One requires a new trial on Counts Two and Four because of the substantial and unfair risk that the jury relied on his plea in considering the remaining counts against him. Count Two charged that Philpot used a firearm "during and in relation to a crime of violence . . . that is, Hobbs Act Robbery, as alleged in Count One of this Indictment." ([1]). At the end of trial, the Court instructed the jury that in order to find Philpot guilty on Count Two, the jury must find beyond a reasonable doubt that he "committed the violent crime charged in . . . Count One of the indictment." ([259] at 985:21-22). The jury heard unqualified evidence during trial that Philpot pled guilty to Count One, and therefore was permitted to satisfy the violent crime element of Count Two with his guilty plea.

This point was made by the Government in its opening statement: "To Counts Two and Three, the question is whether or not, first, did defendants commit the violent crime in Count One. For Mr. Philpot, yes, he's already entered a guilty plea, so yes for him." (Trial Tr. Vol. I [256] at 184:13-16). And it was repeated in the Government's closing argument: "[G]uess what, Mr. Philpot has pled guilty to that robbery count in Count One. . . . We know Mr. Philpot participated in the robbery because he said so, he pled guilty." ([259] at 966:15-16, 972:11-12). It would be fundamentally unjust to allow Philpot's conviction on Count Two to

stand where one of the elements of that charge may have been satisfied by his now-withdrawn guilty plea.

Philpot's trial on Count Four was also infected by his guilty plea.  The jury was instructed to consider each crime and the evidence relating to it separately. (Id. at 992:3-5 ("If you find a defendant guilty of one crime, that must not affect your verdict for any other crime or any other defendant.")).  The Court's limiting instructions, however, were focused on protecting Reese from being impugned by Philpot's guilty plea, and not on separating the jury's consideration of Counts Two and Four from Philpot's guilty plea.  The jury was instructed twice that the "evidence [of Philpot's plea of guilty to Count One] applies only to Mr. Philpot and the crimes charged against him."   In light of the withdrawal of Philpot's plea, Philpot would suffer actual compelling prejudice absent a new trial on Counts Two and Four.

The Court, having found that Philpot is entitled to withdraw his guilty plea and is entitled to a new trial on Counts One, Two, and Four, need not consider Philpot's argument regarding the stipulation of his prior conviction.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Philpot's Motion to Withdraw Guilty Plea [247] is **GRANTED**.

**IT IS FURTHER ORDERED** that Philpot's Motion for New Trial and Supplemental Brief in Support of Motion to Withdraw Plea [253] is **GRANTED**.

**IT IS FURTHER ORDERED** that Philpot's *Pro Se* Motion for Leave to File *Pro Se* Supplemental Brief in Support of Motion to Withdraw Guilty Plea [251] is **DENIED.**

**IT IS FURTHER ORDERED** that Philpot's *Pro Se* Motion to Produce Trial Transcript [252] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Philpot's *Pro Se* Motion to File Supplemental Briefs in Support of Counsel's Motion [262] is **DENIED.**

**SO ORDERED** this 18th day of April, 2018.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE